**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NICOLAS MERCEDES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 04-5325 (JAG) |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**GREENAWAY, JR., U.S.D.J.**


## INTRODUCTION

Plaintiff Nicolas Mercedes seeks review of the Commissioner of Social Security

Administration's ("Commissioner") decision denying his application for Disability Income

Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, pursuant to 42 U.S.C. §§

1383(c)(3), 405(g).[1]  Plaintiff argues that the decision is not supported by substantial evidence

and should be reversed.  For the reasons set forth in this Opinion, this Court finds that the

Commissioner's decision is supported by substantial evidence and should be affirmed.

---

[1] These sections of the Social Security Act (hereinafter "Act") provides that any individual may obtain a review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On May 7, 2002, Plaintiff filed an application for DIB and SSI benefits, pursuant to Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A), respectively. (Tr. 46.)[2] Plaintiff's claim is based on his alleged disabilities of diabetes, tuberculosis ("TB"), asthma and depression, as independent impairments or, in the alternative, in the aggregate. (Pl.'s Mem. L. at 2, 10.) Following the Social Security Administration's denial of Plaintiff's application on August 28, 2002, Plaintiff filed a request for reconsideration on October 17, 2002. (Tr. 34.) The denial was affirmed on March 5, 2003. (Tr. 36.) Subsequent to Plaintiff's request for a hearing, dated March 14, 2003, Plaintiff appeared before Administrative Law Judge Richard L. DeSteno ("ALJ DeSteno") on October 16, 2003. (Tr. 40.) ALJ DeSteno issued a decision on October 31, 2003, finding that the Plaintiff was not eligible for DIB or SSI benefits based upon his disabilities. (Tr. 24.) The following is a summary of his findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not been engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's diabetes is a severe impairment, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1521 and 416.921).

4.    This medically determinable impairment does not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[2] The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

5.      I find that the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.      I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7.      I find that the claimant has had, at all material times, the residual functional capacity to perform a full range of medium work.

8.      The claimant's past relevant work as [a] packer for Cullman Ventures did not require the performance of work-related activities precluded by his residual functional capacity.  (20 C.F.R. §§ 404.1565 and 416.965).

9.      The claimant's medically determinable diabetes does not prevent the claimant from performing his past relevant work.

10.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

(Tr. 23-24.)  Based on these findings, ALJ DeSteno concluded that Plaintiff was not eligible for DIB or SSI benefits under §§ 216(i), 223, 1602 and 1614(a)(3)(A) of the Act.  (Tr. 24.)  On September 29, 2004, the Acting Administrative Appeals Judge Daphne J. Kerr denied Plaintiff's appeal of ALJ DeSteno's decision.  (Tr. 5.)  Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.

## STATEMENT OF THE FACTS

**A.**    **Background**

      Plaintiff, Nicolas Mercedes, was born on December 8, 1948 and stopped working on May 1, 2002, because of his claimed disabilities.  (Tr. 46.)  He was born in the Dominican Republic, moved to the United States in 1988, and was subsequently naturalized.  (Tr. 302-03.)  He

testified that he completed school up to the eighth grade in the Dominican Republic, and is able to read and write in Spanish, but not in English. (Tr. 303, 317.) He is able to speak and understand some English. (Id.) From February 1999 to May 2002, Plaintiff worked as a standing machine-operator at Hop Industries, lifting 80 to 100 pounds of plastic into machines. (Tr. 305-06.) Plaintiff also testified that the job required perfect eyesight to make exact measurements and to cut the plastic into one-inch pieces. (Tr. 306.) Prior to this job, Plaintiff worked various jobs painting, packing and operating machinery that required him to stand and perform significant physical labor. (Tr. 306-11.)

**B.    Claimed Disabilities**

Plaintiff stopped working in May 2002, allegedly because of his diabetes and TB, which caused fevers, shortness of breadth, congestion, dizziness and tiredness. (Tr. 311-12.) He testified that he gets dizzy going up and down stairs and has difficulty walking more than a city block because of shortness of breath, swelling, and numbness in his legs. (Tr. 313.) Plaintiff further testified that he has trouble standing for more than fifteen to thirty minutes at a time because of the swelling in his legs. (Id.) He also testified to suffering from glaucoma, which blurs images and forces him to hold documents six to seven inches from his face to read them. (Tr. 314.) The glaucoma also allegedly restricts his peripheral vision, causes difficulty with bright lights, and prevents him from driving. (Tr. 315-17.) The record also indicates that Plaintiff complained of suffering from high blood pressure, significant weight loss and asthma. (Tr. 129, 148, 204.)

Finally, Plaintiff testified that he was suffering from severe depression, caused by his physical ailments, so much that at times he "would prefer to be dead," which also necessitates his

taking anti-depressant medication.  (Tr. 316.)  The depression, along with his physical ailments,

affects his memory, concentration, and sleep patterns, causing him to forget simple things, and

necessitating his taking sleep medication.  (Id.)

## C.   Medical Evidence Considered by the ALJ

The record indicates that the Plaintiff has been evaluated by physicians on several

occasions.

### 1.   Dr. Cornelio Porras's Examination

On Jan. 15, 2002, a chest x-ray indicated that Plaintiff suffered from upper respiratory

difficulties,[3] with productive cough, chills, and a fever.  (Tr. 112.)  Dr. Cornelio Porras's report

states that Plaintiff "apparently, a few months ago . . . had an episode of food poisoning," which

seemed to be the cause of his respiratory difficulties.  (Id.)  Dr. Porras described Plaintiff as a

"pleasant Hispanic male . . . in no acute distress."  (Id.)  At the time, Plaintiff's blood pressure

was 120/80, heart rate was 80, body weight was 169.5 pounds, eyes were within normal limits,

ears were normal, mouth was dry, neck was supple, and had no signs of edema.  (Tr. 112-13.)

Dr. Porras also noted that Plaintiff had no history of recurrent headaches, eye problems or heart

disease.  (Tr. 112.)  Dr. Porras's report, however, did indicate a history of diabetes.  (Id.)  Dr.

Porras also expressed concern about an "inflammatory process such as sarcoid versus TB [and]

other process such as interstitial pulmonary fibrosis" and concluded that he "will most likely

need a bronchoscopy later [in the] year."  (Tr. 113.)

Dr. Porras then examined Plaintiff on May 9, 2002, after Plaintiff had returned from a trip

_____

[3] Plaintiff's medical records describe the difficulty as "bilateral infiltrates predominating in the right upper lobe as well as in the lingula and left lower lobe."  (Tr. 110.)

overseas.  (Tr. 111.)  Dr. Porras's notes indicated cough, fever, and near six pounds of weight

loss.  (Id.)  Although Dr. Porras initially ruled out tuberculosis (Tr. 111), lab tests indicated TB

and Plaintiff was put on medication.  (Tr. 109.)  Dr. Porras examined Plaintiff five more times

between June 2002 and January 2003.  (Tr. 107, 109, 168-72, 228.)  The examinations recorded

that Plaintiff's condition was steadily improving with increased weight gain from 165 to 186

pounds (Tr. 172, 168); no signs of nausea, fever, chills or coughs (Tr. 109, 107, 228); a

consistent blood pressure level of around 120/80; and a steady heart rate ranging from 80 to 100

beats per minute.  (Tr. 168-72.)  Medical records from July 3, 2002 recorded his blood pressure

at 120/78, his weight at 174 pounds and heart rate at 88 beats per minute.  (Tr. 126.)  These vital

statistics readings are corroborated by the examination notes of Dr. DeGiacomo, who treated

Plaintiff from April 24, 2001 to February 13, 2003.  (Tr. 220-47.)

  2.  Dr. Claudio Dicovskiy's Examination

  Plaintiff was examined by Dr. Claudio Dicovskiy four times between July 6 and October

22, 2002.  (Tr. 158-62.)  On July 6, Plaintiff told Dr. Dicovskiy that he felt depressed ever since

he infected his granddaughter, daughter and wife with TB.  (Tr. 160.)  Dr. Dicovskiy's mental

status exam revealed that Plaintiff had no perceptual disturbances; he was alert and fully

oriented; his speech was clear; he was casually dressed, well groomed and cooperative; and his

impulse control, insight and judgment were assessed to be fair.  (Tr. 161-62.)  Dr. Dicovskiy

determined that Plaintiff was suffering from mild depression with a global assessment of

functioning ("GAF") score of 70.[4]  (Tr. 162.)  Dr. Dicovskiy prescribed Zoloft for the depression.

---

   [4]A GAF scale ranges from 0 to 100 and generally a lower score indicates a more serious
mental disorder.  But, a score of 0 stands for "inadequate information" and a score of 100
indicates "[s]uperior functioning in a wide range of activities . . . .  No symptoms."  AMERICAN

(Tr. 162.)  Dr. Dicovskiy also reported Plaintiff's diabetes and further noted that Plaintiff was suffering from hypertension.  (Tr. 160.)  Subsequent exams noted Plaintiff reporting that he was feeling and sleeping better.  (Tr. 158.)  But, the last exam on October 22, which was six days after Plaintiff had testified before ALJ DeSteno, did note that Plaintiff complained about anxiety in the morning, experiencing trembling and feeling "different."  (Tr. 159.)

### 3.   Dr. Alex Roy's Examination

Plaintiff was examined by Dr. Alex Roy, a consultative examiner, on July 29, 2002.  (Tr. 129-32.)  Plaintiff's son accompanied him during the exam to translate.  (Tr. 129.)  Dr. Roy noted that Plaintiff complained of severe depression, which significantly disrupted his sleep, appetite, energy level, and mood.  (Tr. 129-30.)  The doctor also noted Plaintiff stating that he had been depressed ever since he was diagnosed with diabetes.  (Tr. 130.)  Plaintiff also told the doctor that he spent most of his days in bed, watching television because of his depression.  (Tr. 130.)  Furthermore, as of the time of Dr. Roy's examination, Plaintiff had been in the care of a psychiatrist for approximately one month.  (Tr. 129.)

Dr. Roy concluded that although Plaintiff "looked depressed and miserable" (Tr. 130), he did not suffer from major depression and opined that on the GAF "he would seem to have a score of about 50."[5]  (Tr. 132.)  Dr. Roy characterized Plaintiff's depression as an "Adjustment

PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV-TR) 27 (4th ed. Text Revision 2000).  A GAF score of 70 indicates "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Id.

[5] A GAF score of 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  AMERICAN PSYCHIATRIC

disorder with Depressed Mood." (Tr. 131.)  Additionally, Dr. Roy determined that Plaintiff

suffered no problems with perceptual disturbance, thought process, mental orientation, memory

or information capacity. (Tr. 130-31.)  Dr. Roy also confirmed that Plaintiff's medical history

revealed diabetes, high blood pressure, and TB. (Tr. 131.)  Dr. Roy recommended that Plaintiff

continue with his psychiatric care and medication along with possible counseling. (Tr. 132.)

Finally, Dr. Roy stated that Plaintiff "seemed like a sensible man capable of handling any

benefits" and that with possible vocational rehabilitation, improved mood and physical condition,

Plaintiff could reenter the workforce. (Id.)

       4.      <u>Dr. Boris Reydel's Examination</u>

Two days later, on July 31, 2002, Plaintiff was examined by Dr. Boris Reydel. (Tr. 148-

50.)  In addition to the alleged depression (with its associated effects of insomnia and loss of

appetite), TB and diabetes, Plaintiff complained of "extreme fatigue and general weakness,"

which prevented him from working. (Tr. 148.)  Plaintiff also told Dr. Reydel that he suffered

from "some night sweats two to three times a week. . . . chest pains on a daily basis," mostly

because of his cough, and some daily headaches. (Tr. 148.)  More significantly, Plaintiff told Dr.

Reydel that he had lost about forty pounds in the prior two months, but had gained several

pounds back in the previous several weeks. (Id.)

Dr. Reydel's report notes that Plaintiff's medication at the time included Glucotrol XL

(10 milligrams) once a day, Zoloft, Pyridoxine (50 milligrams), Isoniazid, Vitaplex (1000

milligrams) once a day, Rifampin (300 milligrams) once a day and Cephalexin (500 milligrams)

four times a day. (Tr. 149.)  The doctor's exam recorded that Plaintiff's uncorrected vision was

---

ASSOCIATION, <u>supra</u> n.4, at 27.

20/50 in both eyes and corrected vision was 20/40 in both eyes; that he was 5 feet 8 inches tall, well nourished and weighed 179 pounds; his blood pressure was 160/100, but his blood pressure had been normal when measured previously in Dr. Reydel's office; his heart rate was 86 and regular; his respiratory rate was 20, and his lungs were clear.  (Tr. 149.)  Dr. Reydel also noted Plaintiff saying that no one had ever told him that he suffered from high blood pressure.  (Id.)  Dr. Reydel opined that Plaintiff's general weakness could be from his TB and that "[h]is diabetes appeared to be only mildly uncontrolled."  (Tr. 150.)  Lastly, Dr. Reydel expressed "interest" in Plaintiff's hypertensive response to the examination.  (Id.)

### 5.   Dr. Luis Mendoza's Examination

On January 20, 2003, Dr. Luis Mendoza examined Plaintiff's vision and determined that Plaintiff's corrected vision in both eyes was 20/70 and had "some constriction in the peripheral vision."  (Tr. 205-06.)  However, Dr. Mendoza concluded, Plaintiff's vision would not prevent him from functioning safely in the workplace.  (Tr. 210.)

### 6.   State Agency Doctor's Review of Plaintiff's Medical Records

On August 9, 2002, Dr. Mark Isaacs, a state agency psychologist, reviewed Plaintiff's medical records and concluded that Plaintiff's mental impairment was not severe and diagnosed it as an "adjustment disorder with depressed mood."  (Tr. 133.)  Dr. Isaacs further concluded that Plaintiff's mental impairment imposed a mild restriction on his daily living activities, on his ability to maintain social functioning, and on his ability to maintain persistence, concentration or pace.  (Tr. 143.)  Moreover, there was no evidence indicating extended episodes of decompensation.  (Id.)

On August 24, 2002, Dr. Luis Zuniga reviewed Plaintiff's medical records and

determined that there was no evidence of end-organ damage from the diabetes and the TB was not expected to last for twelve months.  (Tr. 156.)

On November 20, 2002, Dr. Chang-Wuk Kang reviewed Plaintiff's records, agreed with Dr. Isaacs's assessment, and concluded that Plaintiff's adjustment disorder was a transient impairment.  (Tr. 201.)

On December 18, 2002, Dr. Lawrence Awalt, another state agency physician, reviewed Plaintiff's medical records and agreed with Dr. Zuniga's conclusions that the TB was not expected to last for twelve months and the diabetes was a non-severe impairment resulting in no end-organ damage.  (Tr. 156, 204.)  Dr. Awalt further noted that there was no documentation of asthma or the alleged crushing and burning chest pain.  (Tr. 204.)  _____


**DISCUSSION**

A.    **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. Section 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the

totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.**    **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. Section 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42

11

U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability

is predicated on whether a claimant's impairment is so severe that he "is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002).  Finally,

while subjective complaints of pain are considered, alone, they are not enough to establish

disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results

from anatomical, physiological or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**     **The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity.[6]  20 C.F.R. §

404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled"

and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it

"significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In

determining whether the claimant has a severe impairment, the age, education, and work

experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe

impairment, the Commissioner addresses step three of the process.  At step three, the

---

[6] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[7] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but must merely ensure "that there be sufficient explanation to provide meaningful review of the step-three determination."  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

---

[7] Hereinafter "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the fifth step, the burden of production shifts to the commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, claimant will not be found disabled. Id.

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F. Supp. 2d 360, 369 (D. Del. 2003). However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, 2003 WL 22016801 at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

**D.    ALJ DeSteno's Findings**

ALJ DeSteno applied the five-step sequential evaluation and determined that the Plaintiff was not disabled within the meaning of the Act. (Tr. 20.) ALJ DeSteno found that Plaintiff satisfied the first step of the evaluation process, given that Plaintiff has not engaged in substantial gainful activity since the onset of his alleged disability in May 2002. (Tr. 21.)

In step two of the evaluation, ALJ DeSteno found that Plaintiff has a "'severe'

14

impairment involving diabetes . . . ."  (Id.)  However, Plaintiff's visual impairment was not severe because medical records noted that Plaintiff's vision could be corrected to 20/70 and, thus, his vision would not hinder his ability to function safely in the work place.  (Tr. 22.) Additionally, ALJ DeSteno found that Plaintiff's TB did not qualify as a severe impairment because, in accordance with 42 U.S.C. § 423(d)(1)(A), the disability did not last for a continuous period of twelve months or more.  (Tr. 21.)  With respect to Plaintiff's claimed disability of asthma and depression, ALJ DeSteno did not find them to be severe impairments because medical evidence demonstrated only a slight or minimal effect on Plaintiff's ability to perform basic work activities.  (Id.)  In evaluating Plaintiff's mental impairment, ALJ DeSteno assessed how the depression would affect his "ability to understand, carry out, and remember instructions, as well as the ability to respond appropriately to supervisors, co-workers and work stresses in a work setting."  (Tr. 22.)  (citing 20 C.F.R. §§ 404.1545(c) and 416.945(c)).

　　　　In step three, ALJ DeSteno concluded that the diabetes did not "meet or equal in severity the clinical criteria of any impairment listed in [20 C.F.R. Part 404, Subpart P, Appendix 1]" because the Plaintiff failed to demonstrate that his diabetes satisfied requirements A, B or C under medical listing 9.08 of Appendix 1.  (Tr. 21.)  ALJ DeSteno determined that with respect to the "B" criterion of listing 12.041, the mental impairment resulted in slight restrictions on activities of daily living; posed slight difficulties in maintaining social functioning; rendered slight deficiencies of concentration, persistence or pace; and resulted in no episodes of decompensation.  (Tr. 22.)  ALJ DeSteno also found that Plaintiff's mental impairment did not satisfy the "C" criterion of listing 12.041.  (Id.)  ALJ DeSteno further buttressed his conclusion with the findings of state agency physicians, who stated that Plaintiff's depression was not a severe impairment.  (Id.)  Furthermore, ALJ DeSteno gave little weight to the GAF score of 50,

15

assessed by psychiatrist Dr. Roy, because the score was "not warranted by [Dr. Roy's] own examination and appeared based largely on Plaintiff's subjective complaints." (Id.)  ALJ DeSteno also discounted the score because Plaintiff's medical records noted a GAF score of 70, which in his assessment was more consistent with Plaintiff's overall mental condition.  (Id.) Accordingly, the depression did not amount to a severe impairment.  (Id.)

ALJ DeSteno considered the severity of Plaintiff's claims of debilitating pain and other subjective complaints and concluded that they were not credible because they were not adequately supported by the record, including all medical and non-medical evidence.  (Tr. 21.) ALJ DeSteno also held that Plaintiff's subjective complaints were inconsistent with Social Security ruling 96-7p and 20 C.F.R. § 404.1529.  (Tr. 21.)  In evaluating the subjective complaints, ALJ DeSteno gave careful consideration to:

> (1) the nature, location, onset duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage effectiveness, and adverse side-effects of any pain medications; (4) treatment, other than medication, for relief of pain; (5) functional restrictions[;] and (6) the claimant's daily activities and work record.

(Id.)  In sum, ALJ DeSteno held that Plaintiff's subjective complaints failed to demonstrate the existence of a qualifying severe impairment.  (Id.)

In step four and the final step of ALJ DeSteno's analysis, Plaintiff was found to have the residual functional capacity to perform past relevant work as a packer for Cullman Ventures, which required Plaintiff to stand and pack pills and bottles into boxes weighing twenty-five to thirty pounds.  (Tr. 22.)  ALJ DeSteno determined that Plaintiff had the ability to stand, walk, and sit for up to six hours in an eight hour day; to lift and carry objects weighing up to fifty pounds; frequently lift and carry objects weighing up to twenty-five pounds; execute arm and leg

controls involving pushing and pulling motions; and perform the full range of medium work.[8]

(Tr. 21.)

**E.    Analysis**

Plaintiff contends that ALJ DeSteno's decision should be reversed and Plaintiff should be awarded all DIB and SSI benefits because the ALJ's decision was not supported by substantial evidence.  (Pl.'s. Mem. L. at 13.)  Plaintiff contends that: 1) ALJ DeSteno erred in dismissing the subjective claims of pain and physical impairments, specifically Plaintiff's "limitation of motion and function, numbness and swelling, fatigue, weakness, headaches, shortness of breath and dizziness, mental impairments including loss of appetite, lack of energy, insomnia, depression, and extreme fatigue, and poor vision" (id. at 8); 2)  ALJ DeSteno erred in not considering "the combined effects of all the impairments on the plaintiff" (id. at 10-11); 3) ALJ DeSteno erred as a matter of law in finding that Plaintiff could perform the full range of medium work.  (Id. at 12.)

**1.    Did the ALJ Err in Dismissing Plaintiff's Subjective Complaints of Pain and Other Physical Impairments?**

Plaintiff claims that ALJ DeSteno failed to analyze properly Plaintiff's subjective complaints.  In assessing whether the claimant is disabled, the ALJ must give consideration to the claimant's subjective complaints of pain.  10 C.F.R. §§ 404.1529, 416.929; Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986).  However, subjective complaints alone will not establish that a claimant is disabled.  Dorf, 794 F.2d at 901.  Although "assertions of pain must be given serious consideration," Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), Plaintiff still "bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence."

---

[8] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, and also includes the ability to perform the exertional requirements of light and sedentary work.  20 C.F.R. §§ 404.1567(c), 416.967(c).

Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996).

Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability];

there must be medical signs and laboratory findings . . . [demonstrating] medical impairments,

which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R.

§ 404.1529(a). The Alexander court further noted "even situations where a subjective complaint

of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that

claim if there is a rational basis to do so." Alexander, 927 F. Supp. at 795.

The medical record indicates that Plaintiff was treated and evaluated by several

physicians for his alleged fatigue, dizziness, weakness, headaches and shortness of breath, as

well as the alleged loss of appetite, lack of energy and insomnia associated with his depression.

However, as noted by ALJ DeSteno, exams by both independent and state agency doctors failed

to demonstrate the existence of medical impairments which could be expected to produce

Plaintiff's claims of pain and impairment. (Tr. 21.) Dr. Porras, who examined Plaintiff seven

times over a one-year period, noted in his reports that Plaintiff was steadily improving, clinically

better, and had no past history of recurrent headaches, eye problems or heart disease. (Tr. 112,

109, 107, 169.) Furthermore, by the time of Dr. Porras's last documented examination, Plaintiff

had clear lungs, no sign of fever or cough, his TB was improving, and he was scheduled to

discontinue his TB medication by February 2003. (Tr. 228.) Dr. Porras's recorded examinations

did not reveal any medical impairment that would substantiate Plaintiff's claims of disabling pain

or impairments.

Dr. Reydel, another treating physician, also did not record any medical impairment that

would substantiate Plaintiff's subjective claims. Although Dr. Reydel did record that Plaintiff

did complain to him about extreme fatigue, general weakness, night sweats, insomnia, chest

18

pains and a weight loss of forty pounds in a period of two months, these claims were not substantiated by Dr. Reydel's medical findings.  (Tr. 148-49.)  In fact, Dr. Reydel's records contradict many of Plaintiff's claims.  Specifically, there was no evidence that Plaintiff suffered any significant weight loss since January 2002.  See Tr. 112, 111, 109, 107, 227 (recording Plaintiff's steady weight gain from January 2002 to February 2003).  In addition, Dr. Reydel's examination notes of July 31, 2002 indicate that Plaintiff believed that his chest pains were caused by his cough (Tr. 148), which was steadily declining as he continued to recover from TB. Dr. Porras's examinations of Plaintiff noted no signs of nausea, fever, chills or coughs.  (Tr. 109, 107, 228.)  Furthermore, the cough, chest pains and TB are all non-qualifying transient impairments, given that Plaintiff was expected to make a full recovery from TB in under twelve months.  (Tr. 156.)

Dr. Reydel's recorded physical examination found that Plaintiff appeared somewhat depressed, but could move around without any visible problem and did not need the assistance of physical devices.  (Tr. 149.)  Dr. Reydel also noted that Plaintiff was well nourished and well developed; his body temperature was normal; his heart rate was 86; his lungs were clear and his vision in both eyes without glasses was 20/50.  (Id.)  Moreover, Dr. Reydel's recorded impression was that Plaintiff's general weakness could be caused by the TB (Tr. 150), which was expected to persist less than the required twelve months for purposes of a qualifying disability. (Tr. 156.)

These findings by Plaintiff's treating physicians were supported by state agency doctors, who reviewed his medical records and did not find any medical impairment that would substantiate Plaintiff's subjective claims.  State agency doctors concluded that, although no neurological exam was done, Plaintiff's claims of hand and foot numbness were not a medically

19

determinable impairment.  (Tr. 203.)  Additionally, on December 18, 2002, Dr. Awalt concluded

that both the TB and fatigue were non-severe, and that there was no documented evidence of

chest pain or asthma.  (Tr. 204.)

The medical record provides substantial evidence discrediting Plaintiff's claims of

subjective pain and impairment.  This conclusion is further supported by the fact that Plaintiff's

brief fails to cite a single instance where the medical evidence supports Plaintiff's subjective

claims of pain and impairment.  Therefore, ALJ DeSteno's conclusion that Plaintiff's subjective

complaints lack credibility is supported by substantial evidence.

**2.      Did ALJ DeSteno Consider the Combined Affects of Plaintiff's Various
Impairments as Required by 42 U.S.C. § 423(d)(2)(B)?**

Plaintiff claims that ALJ DeSteno erred because he failed to consider the combined effect

of Plaintiff's impairments.  Throughout the five step process, the Commissioner is obligated to

consider all of the alleged impairments individually and in combination.  42 U.S.C. §

423(d)(2)(B).  However, Plaintiff still bears the burden in the first four steps of the analysis to

demonstrate how his impairments, whether individually or in combination, amount to a

qualifying disability.  Burnett, 220 F.3d at 118; Williams, 87 Fed. Appx. at 243.  Moreover, even

if Plaintiff can demonstrate that the ALJ did not consider his impairments in combination, the

claimant bears the burden of demonstrating an inability to return to her past relevant work.

Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).

Plaintiff asserts that ALJ DeSteno did not consider the impairments in combination,

apparently because the ALJ did not specifically state that he considered them in combination.

Plaintiff fails to state, however, how a combined-impairments analysis would demonstrate an

inability to return to his past relevant work.  Plaintiff merely puts forth the conclusory statement

that the ALJ's failure to consider the impairments in combination constitutes reversible error. (Pl.'s Mem. L. at 10-11.)

Although ALJ DeSteno did not specifically state that he considered Plaintiff's impairments in combination, a careful reading of his opinion indicates that he did analyze the combined effects of the impairments.  In analyzing the evidence, the ALJ is not obligated to employ particular "magic words" Sassone v. Comm'r of Soc. Sec., No. 05-2089, 2006 WL 15182 at *4 (3d Cir. Jan. 20, 2006) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)), or adhere to a particular format in explaining his decision.  Jones, 364 F.3d at 505.  In memorializing his decision, the ALJ must ensure "that there is sufficient development of the record and explanation of findings to permit meaningful review."  Jones, 364 F.3d at 505. Furthermore, the ALJ's opinion need "not have a specific section dedicated to the assessment of the [combined] impact of" Plaintiff's impairments.  Bryan v. Barnhart, No. 04-191, 2005 U.S. Dist. Lexis 1493 at *3 (E.D. Pa. Feb. 2, 2005).

In light of these standards, ALJ DeSteno's opinion demonstrates that he adequately considered Plaintiff's impairments in combination, assessed their combined severity and their impact on Plaintiff's ability to perform past relevant work.  ALJ DeSteno analyzed the severity and impact of all of Plaintiff's claimed impairments: TB, diabetes, pain, inability to walk or stand for prolonged periods, extreme fatigue and general weakness, blurry vision and depression.  The ALJ found, supported by medical evidence, that the TB was transient, expected to last less than twelve months (Tr. 21); that the diabetes was under control and not severe for the purposes of qualifying for benefits (id.); that his subjective claims of pain and other physical impairments were not medically supported (id.); that his depression was at most moderate and exerted no greater than a slight impact on his ability to work (Tr. 22); that his vision could be corrected to an

21

acuity of 20/70, which, according to Dr. Mendoza, would not hinder him from functioning safely in the work place (Tr. 210); and, thus, all of his impairments did not result in a residual functional capacity insufficient for performing past relevant work.  (Tr. 22.)  The fact that ALJ DeSteno did not specifically note that he was considering Plaintiff's impairments in combination does not render the decision unsupported by substantial evidence.  See Bryan, 2005 U.S. Dist. Lexis 1493 at *4 (stating that "[b]y analyzing and discussing the severity of each of the Plaintiff's impairments, [the] ALJ . . . evidenced that she was reviewing the impact of the combination of Plaintiff's impairments").

ALJ DeSteno's step by step analysis of each impairment demonstrates that he considered each impairment in light of existing impairments on the Plaintiff, particularly on Plaintiff's ability to function in the workplace.  For example, with respect to Plaintiff's claims of severe depression, ALJ DeSteno considered not only the various medical diagnoses but engaged in an analysis of how the depression would affect Plaintiff in the working environment.  (Tr. 22.) More specifically, he considered how the depression would affect Plaintiff's "ability to understand, carry out, and remember instructions, as well as the ability to respond appropriately to supervisors, co-workers and work stresses in a work setting."  (Id.) (citing 20 C.F.R. §§ 404.1545(c) and 416.945(c)).

Additionally, even if Plaintiff were to prove that ALJ DeSteno did not consider the impairments in combination, Plaintiff fails to show how a "combination analysis" would have demonstrated an inability to return to past relevant work.  Plaintiff merely makes the naked claim that the ALJ did not consider the impairments in combination which, Plaintiff further claims, constitutes reversible error.  The basis of Plaintiff's objection is premised on the simple logic that if he has several impairments that nearly miss as qualifying impairments, then several near-

22

misses surely equals one qualifying impairment.  See Pl.'s Mem. L. at 10 (stating, "[a]ssuming arguendo that plaintiff narrowly misses a listed impairment, his individual impairments when taken in combination surely equal the Listings").  The record demonstrates that ALJ DeSteno adequately considered the combined impact of Plaintiff's impairments in reaching his decision and his finding that Plaintiff's combined impairments do not result in a qualifying impairment is supported by substantial evidence.

3.  **Did the ALJ Err as a Matter of Law in Finding that Plaintiff could Perform the Full Range of Medium Work?**

Plaintiff contends that ALJ DeSteno's determination should be reversed because "[t]he residual functional capacity assessment is merely conclusory" and "Judge DeSteno's finding that plaintiff could perform 'medium work' is medically unsupported."  (Pl.'s Mem. L. at 12.)  In support of this assertion, Plaintiff states that his level of physical exertion was restricted by TB and the resulting fatigue, weakness, shortness of breath and dizziness.  (Id.)  Moreover, Plaintiff states that he suffered from a severe mental impairment, which prevented him from working on a regular and continuing basis.  (Pl.'s Mem. L. at 10, 12.)  These assertions, however, are "no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."  Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d Cir. 2003).  In reaching his conclusions, ALJ DeSteno relied on the many consistent evaluations of treating physicians and state agency medical consultants, who are considered experts in the evaluation of medical disability claims.  20 C.F.R. §§ 404.1527(f) and 416.927(f).  Such medical evaluations may constitute substantial evidence if supported by other evidence within the record.  20 C.F.R. §§ 404.1527(f) and 416.927(f).

First, Plaintiff offers no reasoning or analysis to counter the ALJ's conclusion that the TB

and its corresponding impairments do not qualify as severe impairments because the TB is a transient condition, expected to last less than the required twelve months.  Moreover, beyond the transient nature of TB, Plaintiff fails to demonstrate how these claims of impairment are supported by objective medical evidence.  As Plaintiff points out, the medical record is filled with numerous instances of Plaintiff complaining about his fatigue, weakness, shortness of breath and dizziness (Pl's Mem. L. at 12) (citing Tr. 113, 148, 166-200, 220-47).  There is, however, little documented evidence to support the existence of a medical impairment which would cause such symptoms.  Given that Plaintiff has the burden of proving disability in the first four steps of the analysis, "the . . .  Commissioner, is 'entitled to rely not only on what the record says, but also on what it does not say.'"  Bryan, 2005 U.S. Dist. Lexis 1493 at 5 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983)).  Notwithstanding Plaintiff's claims to the contrary, the medical evidence does not corroborate his subjective claims of impairment on his ability to work.  Rather, the evidence supports ALJ DeSteno's finding that the TB and its corresponding effects of fatigue, weakness, fevers, chills and cough are transitory and will not prevent Plaintiff from returning to his previous job for twelve months or more.

Second, the medical record illustrates that Plaintiff – not the medical experts – has characterized his depression as severe and as a disabling impairment.  Although Plaintiff claimed severe depression and misery, there is very little medical evidence to support such assertions.  Moreover, the slight, mostly anecdotal, evidence that appears to support such a claim is, at best, ambiguous and is countered by other medical evaluations to the contrary.  For instance, Dr. Roy noted that Plaintiff "looked depressed and miserable" and recommended that he try to get "back into the workforce when his mood is better and when his medical conditions are under better control."  (Tr. 132.)  Additionally, Dr. Roy diagnosed him with a GAF score of 50 "because he

seems to be very depressed and . . . spend[s] most of his day laying on the bed[,] not interacting and not doing very much." (Id.)  As a result, Dr. Roy recommended that Plaintiff continue taking his antidepressant medication (Zoloft), that his intake of medication be actively monitored, and that Plaintiff undergo counseling.  (Id.)  In the same report, however, Dr. Roy assessed his thinking process and speech as normal; found no reports of paranoia, hallucinations or delusions; appeared "fully oriented to time, person, and place"; found no evidence of memory problems; and maintained "a reasonable fund of general information." (Id. at 131.)  Ultimately, in his diagnosis, Dr. Roy determined that Plaintiff has an "Adjustment Disorder with Depressed Mood." (Id. at 131.)  Moreover, Dr. Roy's report ended with a positive outlook and opined that "[p]erhaps he will get back into the workforce himself" and "[h]e seemed a sensible man capable of handling any benefits." (Id.)  At best, Dr. Roy's assessment lends ambivalent support to Plaintiff's claims of severe mental impairment, an assessment which Judge DeSteno found unconvincing, given its internal inconsistency and the existence of other medical evidence.

ALJ DeSteno gave little weight to Dr. Roy's GAF score assessment because it was inconsistent with Dr. Roy's overall observations and conclusions, and inconsistent with the assessments of other treating physicians and reviewing state agency doctors.  A GAF score of 50, as given by Dr. Roy, indicates serious symptoms, such as "suicidal ideation and severe obsessional rituals." AMERICAN PSYCHIATRIC ASSOCIATION, supra n.4, at 27.  However, Dr. Roy's recorded observations, as noted above, do not indicate a mental impairment of such a serious nature.  Dr. Roy's overall observations give the impression that Plaintiff does suffer from some mental impairment, but will be able to return to work with counseling and medication. Furthermore, while Dr. Roy's characterization and evaluation of Plaintiff was very similar to Dr. Dicovskiy's assessment, Dr. Dicovskiy assessed Plaintiff with a GAF score of 70 (Tr. 162.),

indicating mild symptoms, such as depressed mood and mild insomnia.  AMERICAN PSYCHIATRIC ASSOCIATION, supra n.4, at 27.  These assessments were also consistent with the state agency doctors' review of Plaintiff's file.  Both Dr. Isaacs and Dr. Kang characterized Plaintiff's mental condition as mild and transient, and believed that it would have only a limited effect on his daily living activities.  (Tr. 133, 143, 201.)  Therefore, ALJ DeSteno's finding that Plaintiff's mental condition posed a non-severe, transient impairment on his ability to work is supported by substantial evidence.

Third, ALJ DeSteno's determination that Plaintiff's vision and alleged swelling and numbness of the legs do not affect his residual functioning work capacity is supported by substantial evidence.  Dr. Mendoza, who treated Plaintiff on January 20, 2003, reported that Plaintiff had corrected vision of 20/70 and had "some constriction in the peripheral vision." (Tr. 205-06.)  However, Dr. Mendoza concluded that Plaintiff's vision would not prevent him from functioning safely in the workplace.  (Tr. 210.)  With respect to Plaintiff's claims of his inability to walk or stand because of swelling and numbness in his legs, the record does not reveal any medical report or doctor's diagnosis that would support such a conclusion.  This was also the conclusion of Dr. Awalt, the state agency physician reviewing Plaintiff's medical record.  Dr. Awalt stated that the complaints of hand and foot numbness did not constitute a medically determinable impairment.  (Tr. 203.)  Furthermore, Dr. Awalt stated, Plaintiff's medical record contained no documentation of his alleged asthma and chest pains.  (Tr. 204.)

Lastly, Plaintiff offers no analysis or evidence to counter ALJ DeSteno's conclusion that the diabetes, though severe, did not meet the requirements of listing 9.08 and would not hinder his ability to carry out medium level work.  There is no objective medical evidence that Plaintiff's diabetes is unmanageable, or that it will prevent him from working as a packer.  Dr.

26

Reydel's exam states that Plaintiff's "diabetes appeared to be only mildly uncontrolled," an assessment which is confirmed by two state agency physicians, Dr. Zuniga and Dr. Awalt.  Both doctors concluded that there was no evidence of end-organ damage from the diabetes and that the TB was expected to last for less than twelve months.  (Tr. 156, 204.)  Therefore, Plaintiff's claim that the ALJ erred as a matter of law in finding that he could perform the full range of medium work is unfounded.

## CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: March 30, 2006

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

27